I'd like to reserve five minutes because I don't know where we're going on this in terms of there seems to be a lot of threads out there and the first thing is you don't have to go to law school to know that the man who represents himself as a fool for a client but I'm not really the client. My client is Chad Barnes who's a seaman. He's over there and I believe that it most important thing is that I need to express some sort of sincere apology to remove the ill-affected effects of my poor behavior from the consideration of my client's cause of action. I mean, judiciary is a house of cards and that failure to show respect for a judge anywhere from the Supreme Court of the United States to a justice of the peace is never forgivable and I'm very sorry about that. Judge Seabright excoriated me just this week about discussing things that are not in the record. In another case, I said, oh, I looked at the buoy and he said, well, you're not here an expert on the buoy. Well, there's something that's not exactly in the record. You have to pull it out of there. Today is 1,809 days since the vessel exploded and my client was pulled from the water with blood coming out of his head and taken to a hospital. And Dickens' Bleak House, you know, a case goes on for generations and consumes all of the assets of the state and that's what we kind of have here. We have a, okay, so let's get right down to the issue. Does Barnes have a maritime lien? And I think, okay, so first we file a complaint. It is verified. Barnes lives on the Big Island. This isn't like he's, you know, down the coast. We can give him a bus pass and come over and verify it. It's an issue. The guy doesn't have a place to live. We've got to get him the verification. We've got to get him over to a notary and there's something else. This is a case about, from my perspective, it's about maintenance and cure. And this is, it's not a high end of the law, but it's something myself and my people that I work with, it's just about five families depend on the fact that we... $60 something dollars per day. But the amount was not set and so it was not paid, correct? Yes, Your Honor. Are there remaining factual disputes as to the maintenance amount that you're seeking? In other words, I'm wondering whether factual disputes have pretty much been resolved and now at the summary judgment stage, the court has to set a maintenance amount or whether there's still remaining factual disputes such that, you know, you need to go further, perhaps in the future. You need to go into a trial proceeding before the amount can really appropriately be set. What's your view on that? My view is, Your Honor, that we came in with a wheelbarrow full of evidence and showed the guy was entitled to about $68 a day. Judge Kaye made a determination. He said, Oh, absolutely. That's $68. He has shown his actual costs. He said... Was that a request for an interim determination of actual costs or was that all that you were seeking through the proceedings? If we file the complaint, we're trying to negotiate the payment of maintenance and care. There's a lot of procedural things. You know, you go to the magistrate. Can't we work this out? Right, but were you seeking $68 as an interim amount? Subject to proof of additional reasonable costs? Or was that all you were seeking and the district made a finding? Okay, I think you've shown that you... Yes, Your Honor, correct. It's the latter. That's all you were seeking? As in terms of the amount, it's all that we're seeking. And then we're claimed to be a failure of proof, but there really is a failure of burden of proof problem here. Plaintiff comes in there. We're able to show, Hey, this is what it costs me to go live in that house and to eat at that place while I'm getting better with that doctor. And we showed it. The judge found it. There's a conclusion. He partially granted the motion for maintenance and care. He's a seaman in service. The vessel got hurt on this day. Maintenance is owed. We come in there and say it's $68. Somehow it gets turned around. I'm supposed to show what an average seaman living on the big island would it cost. Now, I have a problem with that in terms of burdens of proof because I'm showing this is what it actually costs. It seems to me that the vessel owner should come and say, Well, that's not appropriate. A reasonable seaman should have to pay this and they can put up the five grand that it costs to get that in a form that it's presentable in this place. You know, these things used to be handled in front of things like the... All right. If I could just move you on. Yes. Maintenance and cure, because now we're down to about 10 minutes. Back to the jurisdictional question. You, on behalf of Mr. Barnes, filed a verified complaint. Originally, yes. And then there was an amended complaint filed that was not verified. Correct. And how that came about is that in the process of working the case, we eventually got the Coast Guard's report and it showed that the thing blew up because there were vapors in the bilge and there's a vapor detection system that's required by the Coast Guard. It's required. So we decided, well, we're going to add a motion for summary. We're going to add a claim for strict liability because that cuts right to the chase. We don't have to do all the other stuff we put in there. We won that, by the way. We know because it has been decided in this case that they were negligent, strictly negligent. My clients... We just cleared the way. We're trying to get the guy maintenance and cure. That's the first issue. How do you get him supported while he's getting better? So when we file it... Now, the claim that we added is a Jones Act claim. It is not sound... You can't make a Jones Act claim against the vessel itself in REM. It's only against the employer. And until we actually got the motion... We didn't know who the employer is. You've got a man, you've got a boat, and you've got an LLC. But you've only got one person there. But there are three potential defendants. Two of them go bankrupt. The man... I've got to calm down a little bit. Take a deep breath. Thank you. Okay. I'm a little worked up about this. There's Mr. Henry who runs this little business. But the law that we're going to get out of this has to apply to Mattson and people who are making $150,000 just as it applies here. So everybody can see that the only thing of value is this inflatable, hard-bottomed Zodiac. It's worth approximately $30,000. So when you're talking about the jurisdiction of it, at some point he declares bankruptcy. And we have in the record testimony that the reason he did it is because he saw he couldn't settle the case. Now, we believe we had a maritime lien from the moment the vessel exploded. That's not how it works for refrigerators and land-based liens. And I think Chandon says two different things by the same name. And that's where it sort of gets blurry about jurisdiction in terms of the vessel. I believe that the controlling law here is Chandon. It's already been decided in this circuit. Wages are not covered by the automatic stay. Now, there are some refinements of that. Harden versus Gordon. Maintenance and cure is not a tort. It's part of your wages. So it's clear that Chandon applies to maintenance and cure also. Mr. Klevansky and Hill argued and said, well, that's a Chapter 11 case. It's not really another kind of a case. And I never knew the difference between a 7, an 11, and a 13. But Judge Seabright at one point said, in another part of this case, because it spread out. Every time we wanted to question something from bankruptcy, it creates another something that's going on. And he said it depends upon whether or not you read Chandon broadly or narrowly. And when that idea was introduced into this proceeding, the sanctions and the tsunami that was heading our way stopped until we figure out whether or not Mr. Barnes has a lien. Because if he had a lien, then the filing of that verification is window dressing. I thought I was facing a jury trial. I'm looking for some cheap evidence. And an easy thing to do is you get the guy to verify the complaint. It's a sworn statement. It goes to the jury. We actually thought we had a jury trial here, and we were days away from it when the bankruptcy move happened. I'm not saying that a person doesn't have a right to declare bankruptcy. And that creates a system of rights in the creditor, or the debtor, excuse me. In maritime law, the primary high pinnacle of everything is the seaman, his right to maintenance and cure down to the last, whatever it's said, the last oar or piece of the ship. And so now we've got something going on here where an admiralty, Barnes is the ward of the court. In bankruptcy, the trustee is the ward of the court. And so if we're looking at the only thing left is this $30,000 or whatever that vessel's worth, who gets to go to the trough first? Because whoever does, everything's gone. Mr. Kavansky's fees, I assure you, far exceed at this point how much we could get out of that vessel, even with selling the permit. And Mr. Barnes, at 1,809 days, far exceeds the value of all the assets in this thing. So the attitude has been, so what? Why are you still doing this? You know, Mr. Barnes feels like a victim in this. He came to me because he was hurt. Nobody else would touch something like this without insurance. We figured it's a no-brainer. It's maintenance and cure. For God's sakes, the guy's hurt. Okay, I wind up having to get, in the record, a $2,500 expert witness report because the judge wouldn't accept the expert witness's opinion of how much it costs a seaman to live on this island. I had to go get it on another island. I had the same guy do it, and Judge Kay said, and I want him to come in here and testify to me. And so who would ever take a case to get a guy 30 or 50 bucks a day? Want to save some time for rebuttal? Yes, done. All right, thank you. We'll hear from the other side. Thank you, Your Honor. May it please the Court, Simon Klobansky specially appearing as I indicated, Your Honor. Could you speak up? A little louder? Voice up. I will do so, Your Honor. And as I indicated, I am specially appearing for the vessel. Just to comment to some of the early colloquy, we do not represent, I do not represent Mr. Henry. I do not represent Mr. Henry's other company. He has his own counsel. She's not here today. That's another story. My impression, having been at the hearing for my narrower interests, was that Judge Kay believed that there was a factual issue to be determined and that he needed an evidentiary hearing or trial. Whether that was correct or not, I have no opinion on that. But that was my understanding from listening to the argument on that issue between Judge Kay and Mr. Friedheim. Turning to our issues, there are three issues. I expect the Court has had a surfeit of briefing on this. I'll try to be brief and see what questions the Court may have. It seems to me there are three issues, and perhaps the first one that should be addressed is the issue of mootness. That is, the vessel, or the raft, has been sold pursuant to an order of the bankruptcy court. There has been no stay. While Mr. Friedheim appealed from the sale order, he did not obtain a stay. The Court had certified the sale order pursuant to 363M of the bankruptcy code, which makes it determined and certifies that it is sold free and clear of any liens. As a consequence, we think that there is no lien that can remain against it for that independent reason, independent of Judge Kay's ruling, that the appeal is moot. If the Court were to determine that, it need not reach the other issues. Turning to . . . What happened to the money? The money is held by the trustee. The trustee holds all the funds in the estate until there are distributions. There have been no distributions from the estate. In this case, the Court had previously determined that, for reasons I can break down, that Mr. Barnes has neither an unsecured claim nor a secured claim in the proceeds and in separate orders. There was no time in the appeal from either of those orders, so I think that is a settled matter in the bankruptcy case, in the bankruptcy proceeding. But, responding to the Court's question, the monies have not been dispersed as of the current time. Are you taking the position that Chandon doesn't apply and that the maintenance and cure claim is not . . . You disagree that it's not subject to the automatic bankruptcy stay? There are two questions there, Your Honor. Let me respond. We take the position that, I mean, Chandon is good law. I don't think it applies here for two reasons. The first reason is, within the case itself, actually that was a wage claim that accrued during the pendency of the bankruptcy. Therefore, it was an administrative claim and an administrative liability of the bankruptcy estate. All other applicable laws that apply to the accrual of claims or liabilities apply during the pendency of the case. That's the first answer. The second answer is that what Chandon said is the stay in response to, I think, an objection, a stay argument by the United States was that the stay does not preclude the automatic accrual of, in effect, an inchoate lien by a seaman, in that case for wages. But you can make the application to maintenance and cure as a consequence of this prior injury. What makes this different is that there's no automatic attachment of the lien. That's what Medeja in this circuit and even the case by the Millennium Sea Carriers case in the Second Circuit hold, that because for the lien to attach to the vessel, one has to verify the complaint. And that's not automatic. It takes an action by- But the original complaint was, in fact, verified. The original complaint was verified. They amended the complaint. The law, the uninterrupted law in this circuit, and Judge Kaye relied on Lacey for that, but there's basically a line of cases that provide that when you amend a complaint, the original complaint is a nullity. It has no further existence, consequence whatsoever. So they were required to verify the amended complaint, and they failed to do so. Does the fact that all parties appeared and litigated the case for about 18 months waive any objection that could have been asserted to that? No, and the reason is because at that time, early in the case, we were not involved. That was prior to the bankruptcy. The defendants were represented by an Admiralty Defense Council, and in the answer to the amended complaint, they contested jurisdiction. They denied jurisdiction, and that does not- in the event that your denial is overcome, but I think the court cited that. I think it's paragraph 8 of their, if I recall correctly, of their answer to the complaint. They denied jurisdiction. They admitted that the vessel, as it were, is situated in the state of Hawaii. Sure, but that wasn't until 18 months later. I'm sorry? That wasn't until 18 months later when the answer was filed to the amended complaint, right? So the original complaint was filed. It was verified properly, and the vessel never got arrested, but nobody ever objected or raised an issue to that. I don't think-I'm sorry. I may be lost here. The amended complaint was filed on May 21, 2014. The answer denying jurisdiction was filed in July of 2014. When was the original complaint filed? January 1, 2013, if I correctly copied these from the briefs. They amended the complaint about 13 months later, then in May 21, 2014, and then the answer was within some weeks. I don't know whether they got an extension or what happened, but they answered in July 7, 2014. The bankruptcies were filed in-both bankruptcies were filed in November of 2014, at which time I submit that- Right, and that's what I'm getting at. I'm not asking the questions clearly enough. When the original complaint that was verified was filed in January of 2013, the court never completed jurisdiction by arresting the vessel, right? I-I- And the parties all appeared, and the litigation went on until the eve of trial. That was when the amended unverified complaint was filed, and the answer was filed raising a jurisdictional issue for the first time. So, my question to you is, during all the time between the filing of the original verified complaint and the court basically handling the case without any objection to the defect in jurisdiction, doesn't that waive any jurisdictional defect argument? No, because-I don't think so. Because the first-the initial complaint was verified. You know, we acknowledge that. That's not in doubt. And that established, for that time, in-rem jurisdiction. So, you're saying that in-rem jurisdiction was complete at that point, even without the vessel being arrested? I-you know, I confess I don't know the answer to that. I'm not-it's not my area. So, whether one has to-arguably, one has to arrest the vessel as well, under the next rule, I think, of the supplemental rules. Plainly, it was not arrested. But in-rem jurisdiction initially was established by the filing of the verified complaint. So, let's say that your argument is correct, that the court basically took in-rem jurisdiction upon the filing of the original verified complaint. Did the court then somehow lose in-rem jurisdiction when the bankruptcy case was filed? Not when the bankruptcy case was filed. The court lost jurisdiction when they filed-when they amended their complaint. Because in the amendment-by the amendment of the complaint, under Lacey and all the cases that preceded Lacey, that made the initial complaint, the initial verified complaint, nullity. I think that is an uninterrupted decisional-line of decisional cases from this court. So, at that- I guess I'm going to have to read Lacey, because I-let me-let me just ask you one question. So, I thought-initially you started talking about when the lien attached. Yes. You said it had to be-it would attach when the complaint was-filing of a verified complaint. That-that's correct, and that's- So, he filed a verified complaint. The lien attached at that time, way before any bankruptcy was filed. But it attached- Hold on. It-it attached, correct? I think- According to what you just said. I think that is correct. All right. So, now is your argument that when they filed an amended complaint, the lien sort of dissipated? I think that is correct as well, Your Honor. What case do you rely on for that proposition? Lacey. Lacey? I rely on Medeja. Medeja. So, that the lien goes-when upon the filing of a complaint-an amended complaint, the existing lien is on the vessel as a result of filing the verified complaint, goes poof, gone. Well, because the attachment rests upon the amended-the, excuse me, the verified complaint. Well, technically, as Judge Wynn was just pointing out, the attachment occurs when you arrest the vehicle, or arrest the vessel. And that's actually what the-what the-does this Sotomayor said in the-in the Millennium case. This court rested its decision on the-on the Medeja case, which refers to the attachment by the verification and not the-and not the arrest. And so, it may well be the case that- Let me ask you this. His-his lien-the lien that attached was for maintenance and cure when the verified complaint was filed, correct? Well, it was for his claim of liability, which I would assume included his, you know, maintenance and cure. It may well- Wages. It may well have included his damage, his personal injury damage. I would never- And when he filed the first amended complaint, did that change at all, what he was entitled to? The-it did not change the-his claim, but it basically vacated, I believe, the attachment. And it may-may well be that additionally, because it was not-had not been arrested, that it had never-it had never fully attached. And I-I-I have not- As I understand your argument, you know, I'm certainly no expert in maritime law. But we're really-when we're talking about arresting the vehicle-the vehicle, the vessel, we're talking about-it's analogous to personal jurisdiction. It's not subject matter jurisdiction, right? I-I think-yeah, I think that is correct. And personal jurisdiction, as you know, and I'm sure you would agree, is waivable. Any objections to lack of personal jurisdiction is waivable, right? Yes, I-I would agree with that. Okay. But when I say-when you say it's analogous, I'm not sure if the-if the rule is, and it's the court's rule, I mean, the supplemental rules, are that-that the attachment itself rests upon a verified complaint, then it would follow that in vacating the-the verified complaint, you are surrendering your-your attachment. If it is also true- I assume you're talking about claims. Your claims have been superseded. Why does that extend to the effect of the attachment, the lien, upon proper filing and creation of jurisdiction? Because once-if you accept the court's prior rulings, prior opinions, that-that the-the filing of an amended complaint makes the prior complaint a nullity. Makes the-it says-  Yeah. Okay. Supersedes, and the latter being treated, therefore, as nonexistent. If the plaintiff fails to include dismissed claims in the amended complaint, then the plaintiff is deemed to have waived any error. In filing the-in the ruling dismissing the prior complaint. The- So they're saying the-Lacey could not assert claims against Thomas. In that case, the consequence of the prior complaint being a nullity and the claims not being repeated, the claims were waived. Yes, I understand. So that's-why does that apply to the attachment of the vessel? Because the attachment rests upon there being a verified complaint. So even though the same claims against the vessel are included, because they didn't verify it, and even though the district court didn't do its duty to arrest the vessel, the lien disappears. The answer is that the lien disappeared. I would not say-conclude that the court didn't do its duty. I think that the plaintiff has an obligation or tasks that, as I understand it, the plaintiff has to do-undertake to seek to arrest the vessel. And the-it is an expense for the plaintiff. That's the consequence of the arrest process. But it's not simply a matter of, I think, the court ordering it arrested. I think the plaintiff has to undertake to- Have to initiate it. They've requested, but then the court is supposed to do it. The court is then-if it is-if an arrest is requested, the court will order it, but then the plaintiff has to carry out the duties of getting marshals to serve the vessel and to take-actually to take custody of the vessel. And those are the obligations, as I understand it. I confess I'm not an expert in maritime. That's okay. You've answered the question here over time, so I don't want to- Thank you. Yes. Thank you, counsel. We appreciate your- Thank you. Can I speak? Yes. It's your turn. You have three minutes and 45 seconds. All right. Well, first of all, I don't want there to be any misimpression about what's going on here, Justice Nguyen. They did object to in-rim jurisdiction in the first complaint also. They used standard objections. I used to work for those guys. They hired me out of law school. We were told you always object because it may be something you need. So, and Your Honor, when he says that the court failed to arrest, let me tell you, I arrested the boat in Madeha, and we had to bet it's like Lloyd's of London. You arrest a vessel. You are responsible for Hadley B. Daxondale consequential damages, and that can be absurdly expensive. To what it costs per day to run a Matson vessel, you know, I'm paying for all this money, and I'm betting my house on it. That's why it's like Lloyd's of London. Consequential damages not only to the plaintiff or the claimant, libelant, Mr. Barnes, but to me because I used those processes. This goes back to before there was Google and you were online. Guy's in England. He owns a boat. It's here in Hawaii. Someone delivers a bunch of apples to the boat. They don't pay for it. Guy goes into the court in Hawaii and says, I don't want that boat to leave. They owe me for my hundred bushels of apples. Now, it's not enough just to say it in the lawyer's pleadings. Someone has to swear to it. It's, you know, why verify? It's because somebody's putting themselves on the line. They're swearing to the court. They owe me for those apples. Now, also, you know, all this stuff about superseded complaints, Medeja was at the end of the trial and my guys worked for the boat because they couldn't keep the boat at the pier without people being on there and moving it when the Coast Guard wanted it. So those were post-wages. Mr. Barnes not only had a claim for maintenance and secure, respectfully, it goes way back. This is not a refrigerator. We don't have to file a lawsuit. We don't have to file something down where you file liens and land. From the moment they deliver those apples, from the moment this thing blew up and Mr. Barnes was taken to the hospital, we've got a lien on that boat. We don't have to do anything about it. Now, also, the idea that the bankruptcy court has the power to sell it free and clear of liens, boy, I'd like to go there. You know what I mean? Separation of powers. Bankruptcy court can't apply those supplemental rules and you don't use bankruptcy sale techniques. Okay. Got it. All right. And then about the objection to NREM. All right. Why this is not mideha is that we not only filed that complaint, but in that period of time until we filed the First Amendment complaint, I litigated to try to get the guy a few bucks. It's not just somebody coming in saying, they owe me for those. The judge found it. He found he's a seaman. The judge found everything but the number. Got that. Okay. Where else are we going? I mean, what matters? Is it a separation of powers thing or is it just a question of how does the guy get paid? Is it, you know, okay. What I really want to say is, does Admiralty trump bankruptcy? Does bankruptcy trump Admiralty? Does Trump trump the judiciary? What's going on here? And I wanted to get that line in and leave you laughing. Thank you. With that, we thank you for your argument. Thank you, counsel. We appreciate your arguments in this case. We do. The matter is submitted.
judges: Fisher, Paez, Nguyen